IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

R. CASPER ADAMSON,
        Petitioner,

vs.                                                                Case No.  3:08cv202/RV/EMT

WALTER A. McNEIL,
        Respondent.
_____/

## ORDER, REPORT AND RECOMMENDATION

Petitioner initiated this action May 3, 2008, by filing a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 (Doc. 1).  This cause is now before the court on Petitioner's amended habeas petition (Doc. 10) and memorandum in support thereof (Doc. 10, Attach. (hereafter "Memo")).  Respondent filed an answer to the amended petition and relevant portions of the administrative record (Doc. 18), and Petitioner filed a reply (Doc. 20).  Also pending are Petitioner's motions to expand the record (Docs. 33, 36).

After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that neither an evidentiary hearing nor discovery is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief, and his pending motions should be denied.

I.      BACKGROUND

Petitioner is a state inmate currently incarcerated in Union County, Florida at the Reception and Medical Center, a facility of the Florida Department of Corrections ("DOC"), but he was previously incarcerated at other DOC facilities, including Santa Rosa Correctional Institution (where

he was incarcerated at the time he initiated this action), Taylor Correctional Institution, and Florida State Prison (*see* Doc. 10 at 4A[1] & Memo at 1; *see also* Doc. 33, Attach.; Doc. 39).

Petitioner is serving a thirty-year sentence, which was imposed in 1998 in the Circuit Court in and for Duval County, Florida, following Petitioner's conviction for Second Degree Murder (Memo at 1). Petitioner states that during his DOC incarceration he became "quite litigious" and initially lost "case after case," but after he began winning cases, unnamed DOC officials tried to kill him (*id.*). Thus, apparently in an attempt to be removed from DOC custody or to prevent DOC officials from killing him, in August 2000 Petitioner mailed four threatening letters to (now-retired) United States Magistrate Judge Susan Novotny (*id.* at 1–2). As a result of Petitioner's mailings, he was indicted by a federal grand jury and subsequently convicted of several felony offenses in the Northern District of Florida, in <u>United States v. Adamson</u>, Case Number 4:00cr52/RH (*id.* at 2).[2] Petitioner was sentenced to a total term of imprisonment of 188 months in the Federal Bureau of Prisons,[3] to run consecutively to the thirty-year state sentence he is presently serving (*see* Case Number 4:00cr52/RH (Doc. 123 at 2)).

On or about April 25, 2002, following the federal criminal proceedings, Petitioner was returned to the custody of the DOC and imprisoned at Florida State Prison ("FSP") (Doc. 10 at 4). Shortly thereafter, Petitioner received twenty-six (26) disciplinary reports ("DRs") at FSP for "threats and disrespect to officials," relating to Petitioner's conduct in mailing the letters to Judge Novotny (Doc. 10 at 4A & Memo at 2). And in May or June 2002, Petitioner received a twenty-seventh DR for "lying to officials," relating to Petitioner's conduct in mailing a letter to a clerk with the Florida Department of Motor Vehicles ("DMV"), in which Petitioner provided false information (Doc. 10 at 4A & Memo at 4). More specifically, Petitioner falsely claimed to be a niece of Karen

---

[1] The page numbers utilized in this Report, in referring to documents submitted by Petitioner, are the page numbers assigned by Petitioner and not those assigned by the CM/ECF docketing system.

[2] Petitioner notes he was also charged in the same indictment (and convicted) of soliciting the murder of FBI Special Agent Mark Leon, but as discussed *infra*, the issues in the instant action do not concern Petitioner's conduct directed toward Agent Leon (*see* Doc. 20 at 3).

[3] Petitioner received lesser sentences on some counts, but all counts were ordered to run concurrently with the longest sentence (that is, the 188-month term of imprisonment imposed on Count One) (*see* Case Number 4:00cr52/RH (Doc. 123 at 2)).

E. Rhew, the Assistant United States Attorney ("AUSA") responsible for prosecuting Petitioner in federal court (Doc. 10 at 4A). Petitioner further claimed that he needed AUSA Rhew's home address because "she" (that is, the supposed niece/Petitioner) was in desperate need of a kidney and needed to contact AUSA Rhew, "her" aunt, to see if AUSA Rhew was a possible kidney donor. An official or clerk with the DMV—believing Petitioner's fabricated story—provided Petitioner with information that included AUSA Rhew's home address (*id.* & Memo at 4–5). Petitioner then mailed a threatening letter to AUSA Rhew's home, stating, in relevant part, "You can run, bitch, but you can't hide." (Doc. 10 at 4B).

Petitioner states he was convicted of the first twenty-six (26) DRs and as a result "lost a substantial amount of gain time" and served two years in disciplinary confinement (*id.* at 4A). He states he was also convicted of the twenty-seventh DR and as a result "lost over three years of gain time" (*id.* at 4A–4B).[4] Petitioner contends that "but for the 27 DRs" he would have been released from DOC custody in or around August 2002 (*id.* at 4B).[5]

## II.    ADMINISTRATIVE AND STATE COURT PROCEEDINGS

As noted *supra*, Petitioner received the twenty-seven (27) DRs at FSP between April and June 2002 and was convicted of each DR shortly thereafter (but no later than August 2002, as evidenced by Petitioner's statement that he would have been released from DOC custody in August 2002 but for the DRs). According to Petitioner, "administrative appeals of all 27 DRs were filed and denied," and then—Petitioner "believes"—the DRs were "challenged in a single mandamus petition filed in Leon County," where Petitioner was denied relief (Doc. 20 at 5). Petitioner appealed to the Florida First District Court of Appeal ("First DCA") and again was denied relief (*id.*). Petitioner states that following the decision of the First DCA, "[t]he matter lie [sic] dormant for six years," or until April 2008 (*see id.*).

---

[4] In the Memo Petitioner states that as a result of the 27 DRs he "spent over two years on disciplinary confinement and lost around six years of gain time" (Memo at 4). Petitioner also notes that he received an additional DR in 2006 for threatening another federal judge, but that DR "has no effect on this petition and therefore is not challenged here" (*id.* at 17 n.10).

[5] The twenty-seven DRs are not part of the record before this court, and Petitioner states that the log numbers of the DRs are unknown (*see* Doc. 10 at 4A).

On or about April 13, 2008, while incarcerated at Santa Rosa Correctional Institution ("SRCI"), Petitioner received from the law library (and reviewed) portions of the Florida Administrative Code, which prompted Petitioner to submit a formal grievance to the assistant warden of SRCI regarding the twenty-seven (27) DRs received at FSP in 2002 (*see* Memo at 4–5; Doc. 18, Ex. B).[6] Petitioner characterized his grievance as "a belated appeal of 27 DRs written in 2002 for threats, disrespect to officials, and lying to officials" (*see* Doc. 18, Ex. B). Petitioner claimed his appeal was an emergency appeal, based on Petitioner's belief that he was being illegally detained and entitled to immediate release into federal custody (*id.*). Petitioner contended in the "emergency appeal," as he does in the instant petition, that Judge Novotny and the DMV clerk, as non-DOC employees, were not "constituted authorit[ies], [as defined in the Florida Administrative Code], so as to permit disciplinary action" against him; that he could have been issued only four DRs with regard to Judge Novotny because he sent her only four letters; and, apparently, that his convictions of the DRs regarding Judge Novotny constituted double jeopardy (*see id.*). In a response to Petitioner's grievance, dated April 15, 2008, Petitioner was advised by SRCI officials as follows:

> YOUR REQUEST FOR ADMINISTRATIVE REMEDY OR APPEAL HAS BEEN RECEIVED, REVIEWED AND EVALUATED.
>
> THIS GRIEVANCE IS NOT BEING ACCEPTED AS A [sic] EMERGENCY GRIEVANCE.
>
> THIS GRIEVANCE IS BEING RETURNED WITHOUT FURTHER PROCESSING IN THAT IT WAS NOT FILED IN A TIMELY MANNER AS REQUIRED IN CHAPTER 33-103.014(E) [requiring, in relevant part, that emergency grievances filed at the institutional level or directly with the DOC Secretary be filed within fifteen calendar days of the date that the incident or action being grieved occurred]. THE FORMAL GRIEVANCE WAS NOT RECEIVED WITHIN 15 CALENDAR DAYS FROM THE DATE ON WHICH THE INCIDENT OR ACTION BEING COMPLAINED ABOUT OCCURRED.
>
> IN ADDITION, THE ADDITIONAL INFORMATION YOU PROVIDED WAS ACCESSIBLE AND AVAILABLE TO YOU AT THE TIME YOU FILED YOUR ORIGINAL GRIEVANCE.

(Doc. 18, Ex. B).

---

[6] The grievance filed at SRCI on April 15, 2008, was assigned Log Number 0804-119-192 (*see* Doc. 18, Exs. B, C).

On April 17, 2008, Petitioner filed an appeal with the Secretary of the DOC (*id.*, Ex. C). Petitioner's appeal was denied and returned without action on April 28, 2008 (*id.*). In denying the appeal, Petitioner was informed that his grievance was not accepted as a grievance of an emergency nature, and his appeal to the Secretary failed to comply with the regulations because his grievance at the institutional level did not comply with the regulations (*id.*). Petitioner initiated this action five days later, on May 3, 2008 (*see* Doc. 1 at 6), without first pursuing relief in the state courts.

After Petitioner initiated the instant action, he was permitted to supplement the record with a grievance directed to the Warden of SRCI, dated October 16, 2008, which was denied on November 3, 2008, and Petitioner's appeal therefrom dated November 4, 2008, which was denied on November 19, 2008 (*see* Docs. 24, 27, 28, 31).[7]

III.     PETITIONER'S CLAIMS

In the instant case, Petitioner's amended petition includes the following two claims:

Ground One:     The Fla. Dept. of Corrections (DOC) lacked jurisdiction to write and convict Petitioner of 27 disciplinary reports (DRs).

Ground Two:     The 26 DRs for disrespect and threats [toward Judge Novotny] constitutes (sic) double jeopardy.[8]

(Doc. 10 at 4). In support of Ground One, Petitioner contends that he was denied his Fourteenth Amendment right to due process because the DOC "lacked jurisdiction" over Judge Novotny and the DMV clerk, as non-employees of the DOC (*id.* at 4B). Specifically, Petitioner contends that Judge Novotny and the DMV clerk are not employees, officials, or persons of constituted authority, as set forth in Chapter 33-208.001(1)(a) of the Florida Administrative Code, therefore, his disrespect toward or threats against Judge Novotny did not constitute a violation of Fla. Admin. Code rr. 33-601.314(1-4) and (1-3) (Memo at 5, 13–14).[9] Similarly, Petitioner contends he could not be

---

[7] The grievance dated October 16, 2008, was assigned Log Number 0810-119-313 (*see* Doc. 24, Attach.).

[8] Petitioner later abandoned his double jeopardy claims (*see* Docs. 22, 23). Therefore, the court will consider only the claims raised in Ground One.

[9] Rule 33-208.001(1)(a) designates certain "officers and employees of the Department of Corrections" as "law enforcement officers." *See* Fla. Admin. Code r. 33-208.001(1)(a) (1988). Rules 33-601.314(1-3) and (1-4) prohibit "[s]poken or written threats" and "[d]isrespect to officials, employees, or other persons of constituted authority expressed by means of words, gestures, and the like." *See* Fla. Admin. Code rr. 33-601.314(1-3), (1-4) (2002).

convicted of lying to an official (that is, the DMV clerk) under Fla. Admin. Code r. 33-601.314(9-10), which prohibits falsifying records or lying to a "staff member or others in [an] official capacity." Fla. Admin. Code r. 33-601.314(9-10) (2002). (Doc. 10 at 4B & Memo at 12–14). As relief, Petitioner requests that the twenty-seven (27) DRs be expunged from his record and his gain time restored, "which will result in his immediate release" from the DOC "to the [custody of the] U.S. Marshals" (Doc. 10 at 6 & Memo at 19).

## IV. RESPONDENT'S RESPONSE

Respondent seeks dismissal of the amended petition on several grounds. Respondent first contends that Petitioner failed to properly exhaust his administrative remedies (Doc. 18 at 4–8). Respondent also notes that Petitioner failed to pursue his state court remedies, and he is procedurally barred from pursuing them now; therefore, Petitioner's instant claims are precluded from federal review (*id.* at 7–8). Respondent also contends that to the extent Petitioner asserts that his recent discovery of relevant provisions of the Florida Administrative Code constitutes "newly discovered evidence" and, therefore, excuses his failure to timely exhaust administrative remedies, the "evidence" is not new because the relevant provisions of the Florida Administrative Code were available to Petitioner in 2002 (*id.* at 8). Lastly, Respondent contends that Petitioner's "jurisdictional" and due process claims are without merit (*see id.* at 8–11).[10]

## V. EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[11] thereby giving

---

[10] Respondent also notes that a petitioner must challenge each DR separately unless all DRs were upheld in the same state court proceeding, and Petitioner failed to do so (Doc. 18 at 10 (citing Hale v. McDonough, 5:06cv210/RS/EMT)). Petitioner, however, maintains that all 27 DRs were challenged in a single mandamus action (*see* Doc. 20 at 18–19). The issue need not be resolved, however, as it does not affect the undersigned's analysis or recommendation.

[11] Section 2254 provides, in pertinent part:

(b)(1)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
   (A)  the applicant has exhausted the remedies available in the courts of the State; or
   (B) (i) there is an absence of available State corrective process; or
        (ii) circumstances exist that render such process ineffective to protect the rights of the applicant. . . . .

the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). "To satisfy the exhaustion requirement, the petitioner must have fairly presented the substance of his federal claim to the state courts." Picard, 404 U.S. at 277–78; Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276 74 L. Ed. 2d 3 (1982). And, to fully exhaust, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 1732, 144 L. Ed. 2d 1 (1999) (citing 28 U.S.C. § 2254(c)). Failure to exhaust is proper grounds for dismissal of the petition. Keeney v. Tamayo-Reyes, 504 U.S. 1, 10, 112 S. Ct. 1715, 1720, 118 L. Ed. 2d 318 (1992).

Section 2254 provides two exceptions to the exhaustion requirement: (1) there is an absence of available state corrective process, and (2) circumstances exist that render such process ineffective to protect the prisoner's rights. 28 U.S.C. § 2254(b)(1)(B). As to the first exception, if a Florida prisoner wishes to challenge a disciplinary sanction imposed by the DOC, he must file a petition for habeas corpus or mandamus relief in the appropriate state trial court and, if unsuccessful, he must file a petition for certiorari review in the appropriate state appellate court. See Jones v. Florida Department of Corrections, 615 So. 2d 798 (Fla. 1st DCA 1993) (holding that appropriate remedy to seek review of order denying administrative appeal of disciplinary report against prisoner is by petition for extraordinary relief in circuit court, and if petition is denied, prisoner may then seek review of final order of circuit court); White v. Moore, 789 So. 2d 1118 (Fla. 1st DCA 2001) (after exhausting administrative remedies regarding disciplinary sanction imposed by DOC, inmate filed petition for writ of mandamus in Circuit Court in and for Leon County, and upon being denied relief, properly sought certiorari review from First DCA); see also 41 Fla. Jur. 2d, Prisons and Prisoners, § 233 (2009) ("Upon exhausting the administrative remedies available for redress of a grievance, an inmate may, if judicial action is necessary, invoke the jurisdiction of the circuit court, generally in

_____

(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

the county of incarceration. The appropriate remedy in this situation is for the inmate to file a petition for extraordinary relief in the Circuit Court which, if denied, may then be appealed to the District Court of Appeal.") (citing Jones v. Wainwright, 298 So. 2d 542 (Fla. 2d DCA 1974); Jones, 615 So. 2d at 798) (emphasis added).

With regard to venue of state court actions challenging DRs, petitions asserting claims challenging DRs which resulted in the loss of gain time and which seek restoration of gain time but not immediate release, are properly brought in the Circuit Court for the Second Judicial Circuit, in Leon County, Florida, where the DOC is headquartered. *See* Bush v. State, 945 So. 2d 1207, 1213–14 (Fla. 2006) ("we hold that the proper venue for a prisoner's challenge to a sentence-reducing credit determination by the [DOC], where the prisoner has exhausted administrative remedies and is not alleging entitlement to immediate release, continues to be in circuit court in Leon County, where the [DOC] is located") (emphasis added). If the prisoner is claiming entitlement to immediate release, however, venue is properly laid in the county where he is incarcerated. *See* Grace v. State, 3 So. 3d 1290 (Fla. 4th DCA 2009) (if petitioner claims entitlement to immediate release, he should file petition for writ of habeas corpus in circuit court in county where he is incarcerated).

As to the second exception, that is, existent circumstances that render state process ineffective to protect the prisoner's rights, the following circumstances have been recognized by the Eleventh Circuit as rendering state process "ineffective": (1) exceptional circumstances of peculiar urgency where the federal interest is paramount, such that comity considerations are overridden (*see* Granberry v. Greer, 481 U.S. 129, 136, 1676, 107 S. Ct. 1671, 95 L. Ed. 2d 119 (1987); Galtieri v. Wainwright, 582 F.2d 348, 354, n.13 (5th Cir. 1978) (citing Ex parte Royall, 117 U.S. 241, 6 S. Ct. 734, 740, 26 L. Ed. (1886) (exhaustion not required "in . . . cases of urgency, involving the authority and operations of the general government")),[12] (2) an application for relief in the state forum would be futile (*see* Darr v. Burford, 339 U.S. 200, 218–19, 70 S. Ct. 587, 597–98, 94 L. Ed. 761 (1950), *overruled in part on other grounds by* Fay v. Noia, 372 U.S. 391, 83 S. Ct. 822, 9 L. Ed. 2d 837

---

[12] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

(1963); <u>Howard v. Davis</u>, 815 F.2d 1429, 1430 (11th Cir. 1987); <u>Brand v. Lewis</u>, 784 F.2d 1515, 1517 (11th Cir. 1986)), or (3) the state has unreasonably delayed acting on the prisoner's effort to invoke state remedies (*see* <u>Breazeale v. Bradley</u>, 582 F.2d 5, 6 (5th Cir. 1978)).

VI.    DISCUSSION

The record establishes that Petitioner did not raise in the state courts the claim asserted in the instant petition, that is, that the DOC lacked jurisdiction to convict him of the DR's.  The claim raised in the instant petition was raised in Petitioner's formal grievance/emergency appeal, filed April 13, 2008, after Petitioner discovered, in April 2008, certain provisions of the Florida Administrative Code which allegedly supported his claim.  As noted *supra*, the "emergency" grievance/belated appeal was denied on April 15, 2008, and Petitioner's appeal to the Secretary of the DOC was denied on April 28, 2008, just five days before Petitioner initiated the instant action and without having pursued any relief in the state courts.  Thus, the state courts have not been provided an opportunity to resolve Petitioner's claim, and Petitioner has therefore failed to exhaust his state court remedies prior to filing the instant federal habeas action.  Accordingly, the instant petition is subject to dismissal based on Petitioner's failure to exhaust, unless, as Petitioner appears to assert, an exception to the exhaustion requirement exits.

While acknowledging that his "normal remedy" would be to pursue mandamus relief in the state courts, Petitioner asserts he has "no available state remedies" and, further, that pursuing state court remedies would be futile because he has been deemed a "vexatious litigant" and is prohibited from filing cases in the Santa Rosa and Leon County state courts (Memo at 8–11).  Specifically with regard to Santa Rosa County, Petitioner states he has been "barred from the courthouse" by order of Circuit Court Judge Thomas Santurri, but he has filed a motion for rehearing regarding Judge Santurri's order, and that motion is pending (*id.* at 10).  Petitioner further states that an order of dismissal entered by Judge Santurri was reversed on appeal by the First DCA on April 3, 2008 (*id.* at 10–11).  With regard to Leon County, Petitioner states that Judge Janet Ferris entered an order on March 17, 2006, prohibiting Petitioner "from filing any new action unless he paid the filing fee or was represented by counsel, not including colorable claims for habeas relief" (Memo at 9).  Petitioner also states that Judge Ferris's order was vacated on appeal in 2007, but nevertheless two subsequently-filed cases have been dismissed by Leon County Circuit Judge John Cooper (*id.*).

Petitioner states, however, that he has filed motions for relief regarding Judge Cooper's orders of dismissal, and those motions are pending (*id.* at 9–10).

    For the following reasons, the undersigned finds unavailing Petitioner's assertion that an "unavailability" or "futility" exception to the exhaustion requirement exists. First, Petitioner is now incarcerated in Union County, Florida; therefore, a petition challenging gain time forfeitures would be properly brought in Union County or Leon County, depending on whether Petitioner was claiming entitlement to immediate release. If Petitioner contends he is entitled to immediate release, Florida law provides that his claims are properly presented to the Circuit Court in and for Union County. Petitioner does not allege he has been banned from filing legal actions in that court. Even if Petitioner did not seek immediate release, thereby making the Circuit Court in and for Leon County the proper court to hear his claims, Petitioner has failed to demonstrate that state process in unavailable to him there. Petitioner acknowledges that the order prohibiting him from initiating actions in Leon County does not prohibit the filing of "colorable claims for habeas relief." In other words, the order specifically permits the filing of certain types of habeas actions. Moreover, Judge Ferris's order does not prohibit the filing of cases accompanied by the filing fee, and Petitioner has not asserted that he is unable to pay the state court filing fee (the court notes Petitioner paid the filing fee in the instant habeas action). Additionally, Petitioner states that Judge Ferris's order was vacated on appeal. Although Petitioner asserts that subsequently filed actions in Leon County have been dismissed, Petitioner has not identified the nature of the actions that were dismissed, and he states those motions for relief from those judgments of dismissal are pending. Thus, while Petitioner assumes that a challenge to the DRs would be prohibited in Leon County, the undersigned will not speculate that the Leon County Circuit Court would act in a particular manner (that is, prohibit Petitioner from pursuing habeas or mandamus relief there). *See* Nichols v. McNeil, 331 Fed. Appx. 705, 708 (11th Cir. June 23, 2009) (district court erred, in part, by assuming that state court would have acted in a particular manner). Thus, Petitioner has failed to show his circumstances have rendered a state mandamus action unavailable or ineffective to protect his rights.[13]

---

    [13] Even if Petitioner was still incarcerated in Santa Rosa County, where he was incarcerated at the time he initiated this federal habeas action, he has failed to demonstrate that a state corrective process is unavailable to him there. Petitioner acknowledges that he filed a motion for reconsideration of Judge Santurri's order "barring him from the [Santa

In sum, the substantive issues raised in the instant habeas petition, although constitutional in nature, are the types of claims which ought to be first presented in a state forum. Furthermore, Petitioner's speculative allegations that his filings would be rejected in both Santa Rosa and Leon Counties are insufficient to establish that presentation of his claims in state court would be futile or otherwise ineffective, and the fact that he has been transferred to Union County renders his futility and unavailability arguments even more baseless.

VII.   CONCLUSION

The instant petition is subject to the procedural requirements of § 2254, including the exhaustion requirement set forth in § 2254(b)(1). Petitioner has failed to pursue and exhaust his claims in the state courts, and he has failed to demonstrate that a state corrective process is unavailable or ineffective to protect his rights. Therefore, the instant petition is subject to dismissal without prejudice to afford Petitioner an opportunity to pursue his state remedies.[14]

VIII.   PETITIONER'S PENDING MOTIONS

Pending are two motions to expand the record filed by Petitioner on May 27, 2009, and May 31, 2009 (Docs. 33, 36 & Attachs. thereto). Pursuant to this court's directive, Respondent filed a

---

Rosa County] courthouse," and that the motion for reconsideration was pending at the time Petitioner initiated this action (*see* Doc. 2 at 10 (Memorandum in Support of Petitioner's original habeas petition); *see also* Memo at 10). Furthermore, an order of dismissal by Judge Santurri was reversed by the First DCA on April 3, 2008, one month before Petitioner initiated the instant action. Moreover, although Petitioner assumes a challenge to the DRs would be barred in Santa Rosa County, the undersigned is not willing to speculate that the Santa Rosa Circuit Court would indeed have prohibited Petitioner from pursuing relief there.

[14] In Petitioner's reply, he asserts that DOC officials should have allowed him to file a belated appeal, pursuant to Fla. Admin. Code r. 33-103.011(2), which authorizes an extension of the time periods for filing grievances "when it is clearly demonstrated by the inmate . . . that it was not feasible to file the grievance within the relevant time periods and that the inmate made a good faith effort to file in a timely manner." (*see* Doc. 20 at 8–9). This, too, is a contention that must first be considered by the state courts. Notwithstanding, it is without merit because Petitioner cannot establish that it was not feasible to file a timely grievance. Petitioner acknowledges that he previously challenged the twenty-seven (27) DRs, both administratively and in the state courts, and Petitioner should have raised then the issues he now seeks to raise. The provisions of the Florida Administrative Code on which Petitioner now relies were available to him in 2002—and in the six years preceding the filing of the instant action. For example, Fla. Admin. Code r. 33-601.301(5) (1995) states that every inmate received in the DOC will be given a copy of the disciplinary rules, and further, that copies of the rules "shall also be available in the institution library." Thus, Petitioner likely received a copy of the relevant rules upon his admission to the DOC in 1998; alternatively, the rules have been available to Petitioner at the libraries of the various institutions where he has been incarcerated within the DOC. Indeed, in the instant petition Petitioner states that he received provisions of the Florida Administrative Code from the SRCI law library (*see* Memo at 4).

Case No.: 3:08cv202/RV/EMT

response in opposition to the motion to expand the record, filed by Petitioner on May 27, 2009 (Doc. 42).[15]

Petitioner seeks to expand the record with documents he obtained on or about May 30, 2008, August 18, 2008, and April 29, 2009, after he requested records under the Freedom of Information Act ("FOIA") (Docs. 33, 36, & Attachs. thereto). The documents obtained as a result of Petitioner's FOIA request include two letters addressed to Michael Moore, former Secretary of the DOC—one from an F.B.I. agent dated September 16, 2002, and one from former United States Atorney P. Michael Patterson (date unknown[16]); miscellaneous provisions of the Florida Administrative Code; a letter addressed to the Warden of the Federal Correctional Institution in Tallahassee, Florida from an F.B.I. agent dated June 21, 2001; three letters addressed to the Deputy General Counsel of the DOC—two from an F.B.I. agent dated August 8, 2002, and August 29, 2002, and one from AUSA Karen E. Rhew dated June 27, 2002[17]); and an F.B.I. investigative report dated May 14, 2001, concerning the letters Petitioner wrote to Judge Novotny (Docs. 33, 36, & Attachs.).[18]

Petitioner states in the earlier-filed motion that the documents with which he wishes to supplement the record "conclusively prove that the Respondent wrote 26 disciplinary reports for threats and disrespect to officials based on four letters at the request of United States Attorney P. Michael Patterson and agents of the FBI [and that the DRs] . . . were not written for a violation of DOC rules but in obeisance to the retaliatory whims of the Government" (Doc. 33 at 1–2) (emphasis in original). Petitioner similarly contends in the later-filed motion that "these documents

---

[15] Respondent was not directed to respond to the motion filed on May 31, 2009, as the later-filed motion is identical in all material respects to the earlier-filed motion. The only difference between the two filings is the addition of three pages to the attachment to the motion (that is, the materials with which Petitioner wishes to supplement the record).

[16] Mr. Patterson served as United Stated Attorney for the Northern District of Florida from 1993 through 2001, and the letter was written in his capacity as such; thus, the letter must have been written in or before 2001.

[17] The letter from AUSA Rhew dated June 27, 2002 (and a cover letter from the Department of Justice regarding Petitioner's FOIA request relating to her letter), received by Petitioner on or about May 30, 2008, are the only documents not included with Petitioner's earlier-filed motion.

[18] The court notes that Petitioner supplied many of these same documents with the grievance filed October 16, 2008 (which was assigned Log Number 0810-119-313), and made new arguments based upon them (*see, e.g.*, Doc. 24, Attach.).

Case No.: 3:08cv202/RV/EMT

conclusively prove that the 26 disciplinary reports Petitioner received for <u>four</u> threatening letters were written at the request of federal government officials and not because of any violation of DOC rules" (Doc. 36 at 1–2) (emphasis in original).

In opposing Petitioner's motion(s) to expand the record Respondent notes that all of the documents with which Petitioner seeks to supplement the record were obtained after Petitioner initiated the instant action, and that the documents were created in 2001 and 2002 (Doc. 35 at 2). Respondent asserts that Petitioner could have obtained these documents earlier, but failed to do so; thus, he failed to develop the factual basis for his claim in the state courts. Therefore, this court is precluded from considering those new facts presented for the first time in this federal habeas proceeding (*id.* (citing <u>Jant v. Burtt</u>, 2008 WL 682510, at *9 (D.S.C. Mar. 07, 2008)[19]).

The Rules Governing Section 2254 Cases provide, in relevant part, as follows:

**Rule 7.  Expanding the Record.**

**(a) In General.**  If the petition is not dismissed, the judge may direct the parties to expand the record by submitting additional materials <u>relating to the petition</u>.  The judge may require that these materials be authenticated.

Rule 7, Rules Governing Section 2254 (emphasis added).

Having considered the foregoing, the undersigned concludes that expansion of the record is inappropriate, as the additional materials do not "relate to the petition."  The materials, and Petitioner's stated reason for expanding the record to include them (that is, to establish the reason the DRs were issued to him), are not relevant to the claim raised by Petitioner in the instant action (which is whether Petitioner could properly be convicted of DRs under the Florida Administrative Code based on his lying to a DMV clerk and threatening and showing disrespect toward a United States Magistrate Judge).  Moreover, the additional materials do not change in any way the

---

[19] In <u>Jant v. Burtt</u>, 2008 WL 682510, at *9 (D.S.C. Mar. 07, 2008), the district court stated as follows:

Ordinarily, a § 2254 petition is limited to the factual record developed in state court proceedings and § 2254(e)(2) limits a petitioner's ability to present evidence in a federal habeas proceeding that was not considered by the state court.  Specifically, § 2254(e)(2) provides that a petitioner may not present evidence in a federal habeas proceeding that was not considered by the state court if he 'failed to develop the factual basis of a claim in State court proceedings.'  28 U.S.C. § 2254(e)(2).

undersigned's conclusion that Petitioner failed to exhaust his claims in the state courts and failed to demonstrate he qualified for an exception to the exhaustion requirement. Accordingly, expansion of the record to include the additional materials is not warranted.[20]

Accordingly, it is **ORDERED**:

That Petitioner's motions to supplement the record (Docs. 33, 36) are **DENIED**.

And it is respectfully **RECOMMENDED**:

That this case be dismissed without prejudice for Petitioner's failure to exhaust state remedies pursuant to 28 U.S.C. § 2254(b).

At Pensacola, Florida, this 8<u>th</u> day of January 2010.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


<u>**NOTICE TO THE PARTIES**</u>

**Any objections to these proposed recommendations must be filed within fourteen (14) days after being served a copy hereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; <u>United States v. Roberts</u>, 858 F.2d 698, 701 (11th Cir. 1988).**

---

[20] Although the undersigned allowed Petitioner to expand the record with a grievance submitted after Petitioner filed the instant petition (and attached to the grievance were some of the same documents with which Petitioner now seeks to expand the record), the undersigned did so in an abundance of caution in light of Petitioner's pro se status and before thorough review of Petitioner's claims. The grievance (and materials attached thereto), however, does not change the undersigned's decision to deny further expansion of the record; nor do they affect the recommendation of dismissal.

Case No.: 3:08cv202/RV/EMT